Argued June 21, reargued September 15, reversed October 17, 1916.

## COATES v. SMITH.

(160 Pac. 517.)

Acknowledgment—Sufficiency of Certificate of Acknowledgment.

1. In considering the sufficiency of the certificate of acknowledgment of a mortgage, the whole instrument should be examined.

Acknowledgment—Certificate—Names of Mortgagors—Clerical Error —Statute.

2. Under Section 7109, L. O. L., relative to certificates of acknowledgment of mortgages, where the certificates of acknowledgment of a mortgage identified the parties as known to the officer taking the acknowledgment to be the persons executing the instrument, the fact that the names appeared spelled as "Samuel H. Smith" and "Adora L. Smith," instead of the names of the mortgagors, Chester A. Smith and Otis S. Smith, will not vitiate the instrument, the presumption being that the variance in names was the result of a mere clerical error, as the material matter is the identification of the mortgagors, and not the notation of their names.

[As to when defects in acknowledgments are, and when they are not, fatal, see note in 108 Am. St. Rep. 525.]

Vendor and Purchaser — Certificate of Acknowledgment — Record— Notice.

3. A certificate of acknowledgment of a mortgage failing to name the acknowledging party does not affect the validity of the acknowledgment, where reference is made in the certificate to the party who executed the conveyance, nor does it render the record of the instrument less efficacious to impart constructive notice to a subsequent purchaser.

[As to conclusiveness of certificate of acknowledgment, see notes in 1 Am. Dec. 81; 54 Am. St. Rep. 150.

Acknowledgment—Certificate—Sufficiency.

4. The language of a certificate of acknowledgment of a mortgage will be liberally construed, and, when it refers to the conveyance, reference may be had to the body of the deed or mortgage in aid of the certificate, which is sufficient if the two together show a substantial compliance with the statute.

Acknowledgment—Duty of Officer Taking—Presumption—Statute.

5. There is a presumption that the officer taking an acknowledgment of a deed or mortgage complied with Section 7109, L. O. L.,

requiring that he know or have satisfactory evidence that the person making the acknowledgment is the individual described in and who executed the conveyance.

### Acknowledgment—Mortgages—Form.

6. No particular form is required for an individual acknowledgment of a mortgage.

### Bankruptcy—Right of Trustee—Bona Fide Purchaser.

7. A trustee in bankruptcy, having the right of an attaching creditor, is not *ipso facto* a *bona fide* purchaser for value, and that he is such a purchaser, unaffected by outstanding equities against the bankrupt, is an affirmative defense, which must be pleaded and proved.

### Reformation of Instruments — Equitable Jurisdiction — Parol Testimony.

8. Equity will exercise its jurisdiction for the correction or reformation of a written instrument on the ground of mutual mistake, and for such purpose will receive parol testimony.

### Reformation of Instruments—Between What Parties.

9. Reformation of a written instrument on the ground of mutual mistake will be decreed in a court of equity as between the original parties or those claiming under them in privity, such as judgment creditors.

### Reformation of Instruments—Mistake—Pleading.

10. In a suit to reform a deed or written contract on the ground of mistake, plaintiff should plead the particular circumstances constituting the mistake.

### Reformation of Instruments—Suit to Reform Note and Mortgage—Complaint—Sufficiency.

11. In suit to reform a note and mortgage against the mortgagors and the trustee in bankruptcy of one of them, where the complaint did not show that it was the intention of the parties that an alleged oral agreement as to the time of payment of interest should be incorporated in the note, nor that it was not the intention of either of the parties to rely upon the oral agreement, averred to have been made both before and after the execution of the note, and did not disclose when the alleged omission was discovered by plaintiff, nor what instructions were given the scrivener, or by whom, asserting no fraud on the part of the mortgagors, the circumstances relating to the transaction, as set forth, being very meager, such complaint was insufficient against demurrer on the ground that it did not state facts sufficient to constitute a cause of action.

### Costs—Appeal and Error—Failure to Raise Point Below.

12. In suit to reform a note and mortgage, where the specifications of a defendant's demurrer to the complaint did not direct the attention of the trial court to the point urged against it on such defendant's appeal, he could not recover costs, though successful.

From Multnomah: Calvin U. Gantenbein, Judge.

In Banc.   Statement by MR. JUSTICE BEAN. .

This is a suit in equity to reform and foreclose a mortgage for $1,621, and interest, executed on January 2, 1913, by the defendants Chester A. Smith and Otis S. Smith.   A demurrer was filed and sustained to the complaint.   An amended complaint and a supplemental complaint were thereafter filed.   Defendant R. L. Sabin, trustee in bankruptcy, demurred to the amended complaint.

It is shown by the pleadings of plaintiff that on January 2, 1913, the defendants Chester A. Smith and Otis S. Smith executed to plaintiff their promissory note as follows:

"$1,621.          Portland, Oregon, January 2, 1913.

"Five years after date, without grace, we promise to pay to the order of Catherine Coates sixteen hundred and twenty-one dollars, for value received, with interest after date at rate of 7 per cent per annum until paid.   Principal and interest payable in U. S. gold coin at Sunnyside, Portland, Oregon, and in case suit or action is instituted to collect this note, or any portion thereof, we promise to pay such sum as the court may adjudge reasonable as attorney's fees in said suit or action.   There may be paid on any interest-bearing date any amount in even hundred dollars.

                              "CHESTER A. SMITH.
                              "OTIS S. SMITH."

On the same date, for the purpose of securing the payment of the note, defendants Chester A. Smith and Otis S. Smith executed their real estate mortgage, which is set forth *in haec verba* in the complaint, to which was affixed the following certificate of acknowledgment, omitting the formal parts:

"On the 2d day of January, A. D. 1913, personally came before me, a notary public in and for said county and state, the within named Samuel H. Smith and

Adora L. Smith, his wife, to me personally known to be the identical persons described in and who executed the foregoing instrument, and acknowledged to me that they executed the same freely for the uses and purposes therein mentioned."

This mortgage was duly recorded on January 2, 1913. No interest having been paid on the note, plaintiff elected to declare the whole amount due, and instituted proceedings to foreclose the mortgage. In addition to the allegations of the original complaint, the pleadings of the plaintiff contained the following:

"That at the time the said note was executed and subsequent to the date of its execution, the said defendants Chester A. Smith and Otis S. Smith orally promised and agreed to pay the said interest provided for in said note yearly, that is, to pay the interest on the principal sum of said note on or about the second day of January of each year, after the time of the execution of said note, but that the scrivener who drew up the said note neglected to state in said note that the interest made payable thereby should be paid annually; that at the time of the execution of said note it was, and now is, the custom to pay the interest on promissory notes annually when the time of payment of said note is not stated in said note, and the said custom was known to the plaintiff and the defendants at the time of the execution of said note; that at the time of the execution of said note and mortgage the said E. C. Minor, who acknowledged the same as notary public, erroneously inserted in the acknowledgment of said mortgage the names of Samuel H. Smith and Adora L. Smith, wife of said Samuel H. Smith, in place and instead of the names of the makers of said mortgage, and that the insertion of said names of Samuel H. Smith and Adora L. Smith was through the error, inadvertence and mistake of the said E. C. Minor, and that the said defendants Chester A. Smith and Otis S. Smith were present at the execution thereof, and in the presence of said notary public acknowledged the

execution of said document, and that it was the intention of said scrivener or notary public to insert the names of said Chester A. Smith and Otis S. Smith in the said acknowledgment instead of the names of said Samuel H. Smith and Adora L. Smith.''

Plaintiff prayed that the note and mortgage be reformed to correct the alleged mistake.

It appears that in May 1914, subsequent to the date of the execution of the mortgage, the defendant Chester A. Smith was declared bankrupt; that thereafter, about May 28, 1914, R. L. Sabin, one of the defendants, was elected by the creditors of Chester A. Smith, as trustee in bankruptcy for the latter, and that he has duly qualified as such. It further appears that on April 21, 1913, defendant Otis S. Smith executed a deed conveying all his right and title in the real property mortgaged to defendant Chester A. Smith, in consideration of the sum of $1,500, to be paid thereafter, with interest at 6 per cent, and that such deed was duly recorded; that on June 17, 1914, Otis S. Smith filed his claim against the estate of Chester A. Smith, bankrupt, in the sum of $1,566.50, based upon the note given for the conveyance of said real estate, and received from the trustee in bankruptcy 3 per cent on the amount claimed. The defendant Chester A. Smith made no defense to this suit. The defendant R. L. Sabin made no answer and has pleaded no equities for the creditors in the bankruptcy proceedings.

The defendant Otis S. Smith filed an answer setting up that at the date of the execution of the mortgage he was a minor, and therefore not liable upon his contract.

Plaintiff filed a supplemental complaint pleading therein facts occurring subsequently to the date of filing the original and amended complaints as a waiver and estoppel against the defendant Otis S. Smith of

his right to plead infancy as a defense, and setting forth particularly that all right, title and interest owned by him in the real property described in the mortgage had been conveyed to Chester A. Smith. No other or additional allegations affecting the rights or interests of the defendant R. L. Sabin, other than as appeared in the amended complaint, were contained in the supplemental complaint. Otis S. Smith defaulted, and R. L. Sabin filed a demurrer identical in terms with the demurrer filed to the amended complaint. The court entered his default, and also a judgment and decree on the pleadings reforming the note and mortgage and foreclosing the latter as reformed. From this decree R. L. Sabin, trustee in bankruptcy for defendant Chester A. Smith, appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Sidney Teiser.*

For respondent there was a brief over the names of *Messrs. Kollock, Zollinger & McDowell* and *Messrs. Jeffrey & Lenon,* with an oral argument by *Mr. John K. Kollock.*

MR. JUSTICE BEAN delivered the opinion of the court.

It is contended by defendant R. L. Sabin that he is an innocent third party, that the acknowledgment of the mortgage did not entitle the same to be recorded, and that therefore the recordation imparted no notice to the trustee, and that the latter took the title to the property unaffected by the plaintiff's mortgage.

1–4. In the consideration of the certificate of the acknowledgment of the mortgage the whole instrument should be examined. Where the certificate of acknowl-

edgment of a conveyance identifies the parties as known to the officer taking the acknowledgment to be the persons who executed the same, the fact that the names of the parties appear in such certificate spelled as "Samuel H. Smith" and "Adora L. Smith" instead of the names of the mortgagors, Chester A. Smith and Otis S. Smith, will not vitiate the instrument. It will be presumed that such variance in names is the result of a clerical error merely: 1 C. J., p. 848, note 67b; 1 R. C. L., p. 284, § 62; *Rodes* v. *St. Anthony & Dakota Elevator Co.,* 49 Minn. 370 (52 N. W. 27); *Bell* v. *Evans,* 10 Iowa, 353. The material matter in such a certificate of acknowledgment is the identification of the mortgagors, and not the notation of their names. The one in question shows that the officiating notary declares that the persons appearing before him and acknowledging the execution of the instrument are personally known to him to be the identical persons described therein, and who executed the same. It therefore appears from the instrument that the officer taking the acknowledgment identified the mortgagors, although he did not correctly write their names.

Under our statute there is no specific requirement that the name of a grantor or mortgagor shall be contained in the certificate of acknowledgment. Section 7109, L. O. L., directs that:

"The officer taking such acknowledgment shall indorse thereon a certificate of the acknowledgment thereof, and the true date of making the same, under his hand."

If the certificate shows that such officer knows that "the person making such acknowledgment is the individual described in and who executed such conveyance," the identification is complete according to Section 7119, L. O. L. No other description or

name of the grantor is absolutely essential. Omitting the erroneous names, which may be treated as surplusage, the certificate in the present case plainly identifies the mortgagors. A reference to the mortgage clearly indicates that the names written in the certificate, and also the description of one of the mortgagors as the wife of the other, when both are designated in the conveyance as "single," are clerical errors. It is now well established by the great weight of authority that a certificate failing to name the acknowledging party where reference is made in the certificate to the party who executed the conveyance does not affect the validity of the acknowledgment: 1 R. C. L., p. 284, § 62; *Larson* v. *Elsner,* 93 Minn. 303 (101 N. W. 307, 2 Ann. Cas. 989, and note); *Pickett* v. *Doe,* 5 Smedes & M. (Miss.) 470 (43 Am. Dec. 523); *Milner* v. *Nelson,* 86 Iowa, 452 (53 N. W. 405, 41 Am. St. Rep. 506, 19 L. R. A. 279, and note); *Wilcoxon* v. *Osborn,* 77 Mo. 621. Neither does it render the record of the instrument less efficacious. The record of such an instrument is sufficient to impart constructive notice to a subsequent purchaser in good faith without actual knowledge: *Milner* v. *Nelson,* 86 Iowa, 452 (53 N. W. 405, 19 L. R. A. 279). The language of such certificate will be accorded a liberal construction, and, when it refers to the conveyance, reference may be had to the body of the deed or mortgage in aid of the certificate of acknowledgment, and, if the two together show a substantial compliance with the statute, it is sufficient: 1 C. J., p. 846, § 187; 1 R. C. L., p. 282, § 59; 1 Cyc. 585, 586; *Bell* v. *Evans,* 10 Iowa, 353; *Milner* v. *Nelson,* 86 Iowa, 453 (53 N. W. 405, 19 L. R. A. 279); *Wilcoxon* v. *Osborn,* 77 Mo. 621; *Carpenter* v. *Dexter,* 8 Wall. 513 (19 L. Ed. 426); *Bird* v. *McClelland etc. Co.* (C. C.), 45 Fed. 458; *Geekie* v. *Kirby*

*Carpenter Co.,* Fed. Cas. No. 5295; *Frederick* v. *Wilcox,* 119 Ala. 355 (24 South. 582, 72 Am. St. Rep. 925); *Touchard* v. *Crow,* 20 Cal. 150 (81 Am. Dec. 108); *Wilson* v. *Russell,* 4 Dak. 376 (31 N. W. 645); *International Kaolin Co.* v. *Vause,* 55 Fla. 641 (46 South. 3); *Summer* v. *Mitchell,* 29 Fla. 179 (10 South. 562, 30 Am. St. Rep. 106, 14 L. R. A. 815); *Rackleff* v. *Norton,* 19 Me. 274; *King* v. *Merritt,* 67 Mich. 194 (34 N. W. 689); *Hughes* v. *Morris,* 110 Mo. 306 (19 S. W. 481); *Graham* v. *Whitely,* 26 N. J. Law, 254; *Bauer* v. *Schmelcher* (City Ct. Brook.), 5 N. Y. Supp. 423; *Beckel* v. *Petticrew,* 6 Ohio St. 247; *Dahlem's Estate,* 175 Pa. 454 (34 Atl. 807, 52 Am. St. Rep. 848); *Love* v. *Shields,* 3 Yerg. (Tenn.) 405; *Gulf etc. Ry. Co.* v. *Carter,* 5 Tex. Civ. App. 675 (24 S. W. 1083); *Chandler* v. *Spear,* 22 Vt. 388; *Blake* v. *Hollandsworth,* 71 W. Va. 387 (76 S. E. 814, 43 L. R. A. (N. S.) 714); *Hiles* v. *La Flesh,* 59 Wis. 465 (18 N. W. 435). It is unnecessary to reform the certificate of acknowledgment.

5, 6. The substantial requirement of the recording statute should not unnecessarily be sacrificed for an obvious clerical mistake. It does not appear that anyone has been misled or injured thereby, and the acknowledgment and record of the mortgage were not thereby invalidated. Section 7119, L. O. L., requires that the officer taking the acknowledgment know, or have satisfactory evidence, that the person making it is the individual described in and who executed the conveyance, and it is presumed that the officer did his duty. The officer taking acknowledgment of a deed in this state is required to indorse thereon a certificate of the acknowledgment thereof: Section 7109, L. O. L. No particular form is required for an individual acknowledgment. The mortgage of plaintiff was acknowledged so as to entitle the same to record, and

was therefore constructive notice of plaintiff's equity, notwithstanding the notary's clerical error in the certificate: 1 Am. & Eng. Ency. of Law (2 ed.), p. 547b; *King* v. *Merritt,* 67 Mich 194 (34 N. W. 689); *Kentucky Land Co.* v. *Crabtree,* 113 Ky. 922 (70 S. W. 31); *Shelton* v. *Aultman Co.,* 82 Ala. 315 (8 South. 232). As stated in 1 Am. & Eng. Ency. of Law, *supra.*

"Whenever substance is found, obvious clerical errors and technical omissions or defects will be disregarded."

In 1 C. J., p. 848, § 190, the rule is thus laid down:

"Where, from an inspection of the whole instrument, it appears with reasonable certainty that the person who acknowledged was the one who executed it, the clerical error in stating the name of the grantor will not invalidate the instrument."

The following principle is briefly stated in the case of *Platt* v. *Rowand,* 54 Fla. 237 (45 South. 32):

"The declared and settled policy of the law as construed by this court is 'to uphold certificates of acknowledgment of deeds, and wherever substance is found obvious, clerical errors and all technical omissions will be disregarded.'"

Any interest that the trustee in bankruptcy may have in the premises is subordinate to the lien of plaintiff's mortgage.

7–12. It is next contended by counsel for the defendant trustee that a reformation of a written instrument will not be decreed as against third parties whose rights were acquired without notice of the circumstances, and that the trustee is such a party. It is therefore pertinent to inquire as to the status of the trustee.

Bankruptcy Act of July 1, 1898, Chapter 541, Section 47, subdivision "a," clause 2, 30 Stat. 557 (U. S.

Comp. Stats. 1901, p. 3438), as amended by act of June 25, 1910, Chapter 412, Section 8, 36 Stat. 840 (U. S. Comp. Stats. Supp. 1911, p. 1500 [U. S. Comp. Stats. 1913, § 9631]), provides that a bankrupt's trustee, as to all the property in the custody or coming into the custody of the bankruptcy court, shall be vested with all rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon, and as to all property not in the bankruptcy court the rights of a judgment creditor holding an execution duly returned unsatisfied: See *Pacific State Bank* v. *Coats*, 205 Fed. 618 (123 C. C. A. 634, Ann. Cas. 1913E, 846). Under the amended statute a trustee in bankruptcy is in the position of a lien creditor, and as stated by Mr. Remington in his work on Bankruptcy, has—

"whatever rights creditors under state law would have had had they been 'armed with process,' whether actually so 'armed' or not; the trustee being deemed a levying creditor, so far as property in the custody of the bankruptcy court is concerned, and a creditor armed with an execution returned unsatisfied as to property not in such custody": 2 Remington, Bankruptcy, § 1207.

In Collier on Bankruptcy, page 660, it is stated:

"The purpose of Congress was to embrace within these words every class of creditors with liens by legal or equitable proceedings favored by the varying registration laws of each of the states."

Assuming that the rights of the trustee are equal to those of an attaching creditor under our statute, and considering the case first from such standpoint, it is the settled law in this state that a trustee having the right of an attaching creditor is not *ipso facto* a *bona fide* purchaser for value. That one is such a

purchaser, and not affected by outstanding equities, is an affirmative defense which must be pleaded and proved. Before an attaching creditor or one standing in an equal position can be deemed a purchaser in good faith, he must allege and prove all the facts necessary to establish that character of his ownership: *Rhodes* v. *McGarry,* 19 Or. 222, 229 (23 Pac. 971); *Meier* v. *Hess,* 23 Or. 599, 601 (32 Pac. 755); *Raymond* v. *Flavel,* 27 Or. 219, 248 (40 Pac. 158); *Laurent* v. *Lanning,* 32 Or. 18 (51 Pac. 80); *Dimmick* v. *Rosenfeld,* 34 Or. 101, 105 (55 Pac. 100); *Flegel* v. *Koss,* 47 Or. 366 (83 Pac. 847); *Jennings* v. *Lentz,* 50 Or. 483, 487 (93 Pac. 327, 29 L. R. A. (N. S.) 584); *Ayre* v. *Hixson,* 53 Or. 19, 27 (98 Pac. 515, 133 Am. St. Rep. 819, Ann. Cas. 1913E, 659); *Barnes* v. *Spencer,* 79 Or. 205 (153 Pac. 47). It would seem from the record in this case that, at the most, the standing of the trustee in bankruptcy is equal to that of a judgment creditor: *Pacific State Bank* v. *Coats,* 205 Fed. 618, 626 (123 C. C. A. 634, Ann. Cas. 1913E, 846); *Cooper Grocery* v. *Park,* 218 Fed. 42, 43 (134 C. C. A. 64); *Smith* v. *Bank,* 57 Or. 82, 86 (110 Pac. 410).

Section 7129, L. O. L., provides thus:

"Every conveyance of real property within this state hereafter made, which shall not be recorded as provided in this title within five days thereafter shall be void against any subsequent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance shall be first duly recorded."

Equity will exercise its jurisdiction for the correction or reformation of a written instrument on the ground of mutual mistake, and for this purpose will receive parol testimony: Jones, Ev., § 437.

Reformation of a written instrument on the ground of mutual mistake will be decreed in a court of equity

as between the original parties or those claiming under them in privity, such as judgment creditors: 1 Story, Eq. Juris. (13 ed.), § 165; *Lally* v. *Holland*, 1 Swan (Tenn.), 396; *Smith* v. *Interior Warehouse Co.*, 51 Or. 578, 581 (94 Pac. 508, 95 Pac. 499); *Howard* v. *Tettelbaum*, 61 Or. 145 (120 Pac. 373); *Zartman* v. *First Nat. Bank*, 216 U. S. 134 (54 L. Ed. 418, 30 Sup. Ct. Rep. 368); *Meier* v. *Kelly*, 22 Or. 136 (29 Pac. 265). Mr. Elliott, in his work on Contracts (Volume 3, Section 2381), says:

"In cases of mistake in written contracts equity may interfere, not only as between the original parties, but those claiming under them in privity, such as personal representatives, heirs, assignees and the like. * * However, reformation will not be granted where intervening rights of *bona fide* purchasers for value will be prejudiced, and it has been held that this protection will be extended to the grantee of a *bona fide* purchaser, even though he had notice of the mistake."

In *Zartman* v. *First Nat. Bank*, 216 U. S. 134 (54 L. Ed. 418, 30 Sup. Ct. Rep. 368), which was a suit to reform a written contract, it was held that the jurisdiction which equity has to decree correction of errors in written contracts caused by mutual mistake is not suspended by the bankruptcy law; and the trustee takes property as the debtor had it at the time of the petition subject to all valid claims, liens and equities, including the power of a court of equity to correct a manifest error by mutual mistake in an agreement made prior to the petition.

Was the note due when this suit was instituted? In order that this may be shown, it is necessary to reform the note to conform to the agreement of the parties as they intended the same to be executed. The defendant demurred to the complaint and supplemen-

tal complaint, and insists that the same are insufficient for such purpose.    Each demurrer was as follows:

"Comes now R. L. Sabin, trustee in bankruptcy, one of defendants herein, and demurs to plaintiff's amended complaint for the reason that the same does not state facts sufficient to constitute a cause of action: I. That the note set forth in said complaint shows upon its face that the same is not due, and consequently that there has been no default in the payment of interest, and nothing is set forth in said complaint to modify or change the rule that a written instrument cannot be varied by parol evidence. II. That the mortgage, copy of which is set forth in said complaint, and foreclosure of which is prayed, is not a valid mortgage as against the trustee in bankruptcy, same showing upon its face that it was not acknowledged by the makers thereof as prescribed by law.   III. That said complaint does not show that permission of the District Court of the United States for the District of Oregon was obtained before suit was instituted against R. L. Sabin, who is an officer of said court."

In *Sellwood* v. *Henneman,* 36 Or. 575, at page 577 (60 Pac. 12, at page 13), Mr. Justice MOORE states the rule as follows:

"It has been repeatedly held by this court that, in a suit to reform a deed or written contract on the ground of mistake, the complaint should distinctly show the original agreement of the parties, and point out with clearness and precision wherein there was a mistake."

See, also, *Ramsey* v. *Loomis,* 6 Or. 367; *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811); *Hughey* v. *Smith,* 65 Or. 323 (133 Pac. 68); and cases to which those opinions refer.

The particular circumstances constituting the mistake should be pleaded: 14 Ency. Pl. & Pr., pp. 43, 45, and notes; 18 Ency. Pl. & Pr., p. 824.

The complaint does not show that it was the intention of the parties that the alleged oral agreement as to the time of payment of interest should be incorporated in the note, nor that it was not the intention of either of the parties to rely upon the oral agreement which is averred to have been made both before and after the execution of the note. When the alleged omission was discovered by plaintiff is not disclosed; nor what instructions were given to the scrivener or by whom. No fraud on the part of the payors is asserted. The circumstances relating to the transaction as set forth in the pleading are very meager. While it may be possible that, in the absence of a demurrer, the complaint might be held sufficient, a majority of the members of the court are of the opinion that there was error in overruling the demurrer.

The decree of the lower court, therefore, will be reversed, and the cause remanded for such further proceedings as may be deemed proper, not inconsistent herewith. A default decree was rendered against the trustee defendant. He failed to ask the trial court to set the same aside. To have this done appears to be the main purpose of this appeal: See Section 103, L. O. L.; *White* v. *Northwest Stage Co.,* 5 Or. 99; *Bailey* v. *Williams,* 6 Or. 71; *Mayer* v. *Mayer,* 27 Or. 133 (39 Pac. 1002). It is doubtful if the specifications of the demurrer directed the attention of the trial court to the point now urged against the complaint. Neither party, therefore, should recover costs upon this appeal.                    Reversed.

Mr. Justice Burnett delivered the following dissenting opinion:

On January 2, 1913, Chester A. Smith and Otis S. Smith executed and delivered to the plaintiff their

promissory note of that date, of which a copy is here set out:

"$1,621.          Portland, Oregon, January 2, 1913.

"Five years after date, without grace, we promise to pay to the order of Catherine Coates sixteen hundred and twenty-one dollars, for value received, with interest after date at rate of 7 per cent per annum until paid. Principal and interest payable in U. S. gold coin at Sunnyside, Portland, Oregon, and in case suit or action is instituted to collect this note, or any portion thereof, we promise to pay such sum as the court may adjudge reasonable as attorney's fees in said suit or action. There may be paid on any interest-bearing date any amount in even hundreds dollars.

"CHESTER A. SMITH.
"OTIS S. SMITH."

At the same time they mortgaged to her certain real property in the usual form, conditioned that, if the money due upon the note should be paid, the mortgage should be void, but in case default should be made in payment of the principal and interest, as provided in the note, then she might sell the premises in the manner prescribed by law, etc. Appended to this mortgage was an acknowledgment in the following form:

"State of Oregon,
County of Multnomah—ss:

"On the second day of January, A. D. 1913, personally came before me, a notary public in and for said county and state, the within named Samuel H. Smith and Adora L. Smith, his wife, to me personally known to be the identical persons described in and who executed the foregoing instrument, and acknowledged to me that they executed the same freely for the uses and purposes therein mentioned.

"In witness whereof I have hereunto set my hand and seal the day and year last above written.

"E. C. MINOR,
"Notary Public for Oregon."

A demurrer to the original complaint having been sustained, an amended complaint was filed alleging the giving of the note set out by copy, and making the following statement:

"And that at the time the said note was executed, and subsequent to the date of its execution, the said defendants Chester A. Smith and Otis S. Smith orally promised and agreed to pay the said interest provided for in said note yearly, that is, to pay the interest on the principal sum of said note on or about the second day of January of each year, after the time of the execution of said note, but that the scrivener who drew up the said note neglected to state in said note that the interest made payable thereby should be paid annually; that at the time of the execution of said note it was and now is the custom to pay the interest on promissory notes annually when the time of payment of said note is not stated in said note, and the said custom was known to the plaintiff and the defendants at the time of the execution of said note."

The execution of the mortgage is averred and a complete transcript of it is written into the amended complaint. Concerning the acknowledgment this averment appears:

"That at the time of the execution of said note and mortgage the said E. C. Minor, who acknowledged the same as notary public, erroneously inserted in the acknowledgment of said mortgage the names of Samuel H. Smith and Adora L. Smith, wife of said Samuel H. Smith, in place and in stead of the names of the makers of said mortgage, and that the insertion of said names of said Samuel H. Smith and Adora L. Smith was through the error, inadvertence and mistake of said E. C. Minor, and that the said defendants Chester A. Smith and Otis S. Smith were present at the execution thereof, and in the presence of said notary public acknowledged the execution of said document, and that it was the intention of said scrivener or notary public to insert the names of said Chester A.

Smith and Otis S. Smith in the said acknowledgment instead of the names of said Samuel H. Smith and Adora L. Smith.''

About the defendant Sabin the complaint says:

''That subsequent to the date of the execution of said mortgage, to wit, on or about the —— day of May, 1914, the said mortgagors were declared bankrupt, and thereafter, and on or about the twenty-eighth day of May, 1914, the said R. L. Sabin, one of the defendants herein, was elected by the creditors of said mortgagors trustee in bankruptcy for said mortgagors, and said defendant has qualified as such trustee.''

On the ground that the interest had not been paid annually, the plaintiff prays for a correction of the note and mortgage and for a decree foreclosing the latter as corrected with personal judgment against the makers of the note for the principal and interest, and $175 attorneys' fees. The defendant Sabin, as trustee in bankruptcy, demurred to this amended complaint on the ground that it does not state facts sufficient to constitute a cause of action; that the note set forth in the complaint shows upon its face that the same is not due, and nothing is pleaded to modify or change the rule that a written instrument cannot be varied by parol evidence; that the mortgage copied at large into the plaintiff's pleading is not valid as against the trustee, the same showing upon its face that it was not acknowledged by the makers thereof as prescribed by law; and that the complaint does not show that permission of the District Court of the United States for the District of Oregon was obtained before suit was instituted against Sabin, who was an officer of such court. This demurrer was overruled. Subsequently, upon leave obtained, there was filed what was denominated a supplemental complaint, but

which was precisely like the former one, except that it stated in substance that about April 21, 1913, Otis Smith had conveyed to Chester Smith the interest of the former in the real property mortgaged, and that for the unpaid balance of the purchase price in that sale Otis had filed his claim against the estate of Chester, a bankrupt, upon which the defendant Sabin, as trustee in bankruptcy, had paid a dividend of 3 per cent. The Smiths made no appearance at any stage of the litigation. The defendant Sabin demurred to this complaint, but, without passing upon the same, the court entered a decree against all the defendants for want of an answer, correcting the note and mortgage as prayed for in the complaint, and foreclosing the same. From this decree the defendant Sabin, as trustee in bankruptcy, appeals.

This case comes to us to test the validity of the complaint as against a demurrer to the same. In such a state of the pleadings the rule of construction is that the allegations of the complaint are to be taken most strongly against the pleader; for the validity of his statement is challenged at the outset while there is yet opportunity for him to amend. Concerning the alleged mistake in the note, we observe that it is said that the makers thereof orally promised and agreed to pay the interest annually, but that the scrivener who drew up that instrument neglected to state that provision therein. On its face the pleading avers two separate agreements, one written in the note, and the other expressed orally by the makers. It is not stated that they intended or agreed that this latter stipulation should be included in the note. There is no allegation anywhere in the complaint indicating in the least that the alleged mistake was mutual between the parties or that it occurred through the inadvertence

of the plaintiff and the fraud or deceit of the makers of the note. Neither is it claimed that the alleged mistake occurred without the fault or negligence of the plaintiff. The precept for pleading in such cases has been settled by a long line of authorities in this state. It is thus laid down by Mr. Justice MOORE in *Hughey* v. *Smith,* 65 Or. 323 (133 Pac. 68):

"The rule is settled in this state that, in a suit to reform a written instrument on the ground of misapprehension of the facts involved, the complaint must distinctly allege what the original agreement of the parties was, or point out with clearness and precision wherein there was a misunderstanding, and that such mistake was mutual and did not arise from the gross negligence of the plaintiff, or that his misconception originated in the fraud of the defendant."

See *Evarts* v. *Steger,* 5 Or. 147; *Lewis* v. *Lewis,* 5 Or. 169; *Stephens* v. *Murton,* 6 Or. 193; *McCoy* v. *Bayley,* 8 Or. 196; *Foster* v. *Schmeer,* 15 Or. 363 (15 Pac. 626); *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811); *Meier* v. *Kelly,* 20 Or. 86 (25 Pac. 73); *Epstein* v. *State Ins. Co.,* 21 Or. 179 (27 Pac. 1045); *Kleinsorge* v. *Rohse,* 25 Or. 51 (34 Pac. 874); *Osborn* v. *Ketchum,* 25 Or. 352 (35 Pac. 972); *Thornton* v. *Krimbel,* 28 Or. 271 (42 Pac. 995); *Mitchell* v. *Holman,* 30 Or. 280 (47 Pac. 616); *Sellwood* v. *Henneman,* 36 Or. 575 (60 Pac. 12); *Stein* v. *Phillips,* 47 Or. 545 (84 Pac. 793); *Bower* v. *Bowser,* 49 Or. 182 (88 Pac. 1104); *Smith* v. *Interior Warehouse Co.,* 51 Or. 578 (94 Pac. 508, 95 Pac. 499); *Howard* v. *Tettelbaum,* 61 Or. 144 (120 Pac. 373).

It is also declared in the same substance in *Suksdorf* v. *Spokane, P. & S. Ry. Co.,* 72 Or. 398 (143 Pac. 1104).

The allegation of the custom to pay interest annually on promissory notes does not help the matter,

because custom, while used as a rule of interpretation, can neither add to nor take from the express terms of a contract: Section 727, L. O. L., subd. 12; *McCulsky* v. *Klosterman*, 20 Or. 108 (25 Pac. 366, 10 L. R. A. 785); *Holmes* v. *Whitaker*, 23 Or. 319 (31 Pac. 705); *Savage* v. *Salem Mills Co.*, 48 Or. 1 (85 Pac. 69, 10 Ann. Cas. 1065, note); *Barnard* v. *Houser*, 68 Or. 240 (137 Pac. 227); *Oregon Fisheries Co.* v. *Elmore Packing Co.*, 69 Or. 340 (138 Pac. 862). Moreover, the allegation makes the usage depend upon the fact that no time of payment of the note is stated, but the very note itself would take it out of this alleged custom, because there it is prescribed that it must be paid five years after its date. The oral agreement mentioned cannot be taken as part of the written agreement, for this would violate Section 713, L. O. L., saying:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except * * where a mistake or imperfection of the writing is put in issue by the pleadings."

As we have shown by the authority of *Hughey* v. *Smith,* 65 Or. 323 (133 Pac. 68), the statements of the complaint are not sufficient to raise the issue of mistake. The agreement of the Smiths made subsequent to the execution of the note to pay the interest annually cannot affect the case, because there is no consideration pleaded, for the subsequent agreement, and the mortgage does not purport to secure anything but the note. It does not assure the performance of the alleged oral agreement, whether contemporaneous with

or subsequent to the execution of the written promise to pay.

As to the alleged mistake in the acknowledgment of the mortgage, it is sufficient to say that, if Samuel H. Smith and Adora L. Smith, his wife, were indeed the identical persons described in and who executed the mortgage as the notary certifies, then the interest of Chester A. and Otis S. Smith was not affected by the mortgage. On the other hand, if Chester A. and Otis S. Smith were really the persons who executed the instrument, then is the acknowledgment insufficient to authorize the recording of the mortgage so as to charge the trustee in bankruptcy with notice of its contents. There are many cases where a mere clerical error in the spelling of a name has been disregarded by the court in construing the acknowledgment. Such a case is *Rodes* v. *St. Anthony & Dakota Elevator Co.,* 49 Minn. 370 (52 N. W. 27), where the maker of the mortgage was "Wm. Schrieber" and the certificate of the acknowledgment alluded to him as "Wm. Strieber," whom the notary declared "to be the person above named." In *Paxton* v. *Ross,* 89 Iowa, 661 (57 N. W. 428), there was a deed to "M. Thompson, of Washington City, D. C." The next conveyance in chain of title was from "Michael Thompson, widower, now of Honolulu, Sandwich Islands." It was signed "M. Thompson." The certificate of acknowledgment referred to him as "Michael Thompson," known by the officer to be the person who executed the deed. These differences were disregarded by the court in construing the effect of the conveyances. Many other such cases might be cited; but others, like *Boothroyd* v. *Engles,* 23 Mich. 19, *Stephens* v. *Motl,* 81 Tex. 115 (16 S. W. 731), *Carleton* v. *Lombardi,* 81 Tex. 355 (16 S. W. 1081), *Heil* v. *Redden,* 38 Kan. 255 (16 Pac. 743),

and *Powers* v. *Hatter,* 152 Ala. 636 (44 South. 859),
hold that, where the name in the acknowledgment is
entirely different from that signed to the deed to be
authenticated, the instrument is not entitled to record.
This seems to be the view taken by the pleader in the
instant case; for she counts upon it as a mistake, and
seeks to have it corrected. To hold that the acknowl-
edgment was sufficient to entitle the mortgage to rec-
ord would be making a better case for the plaintiff
than she makes for herself.

In cases such as *Larson* v. *Elsner,* 93 Minn. 303 (101
N. W. 307, 2 Ann. Cas. 989), *Wilcoxon* v. *Osborn,* 77
Mo. 621, and *Milner* v. *Nelson,* 86 Iowa, 452 (53 N. W.
405, 41 Am. St. Rep. 506, 19 L. R. A. 279), cited in
support of the acknowledgment in question, the name
of the grantor was left blank in the certificate, but in
each instance the officer certified that "personally
appeared before me ——, to me personally known to
be the identical person described in and who executed
the foregoing instrument, and acknowledged that he
executed the same for the purpose therein named,"
or employed words substantially the same. These
were held good on the principle that the officer certi-
fies that someone described, not by name, but as the
person who executed the deed, appeared and acknowl-
edged the execution. There are other cases like *Smith*
v. *Hunt,* 13 Ohio, 260 (42 Am. Dec. 201), *Stanton* v.
*Button,* 2 Conn. 527, and *Hayden* v. *Westcott,* 11 Conn.
129, where the certificate recited substantially that
"Personally appeared —— and acknowledged that he
did sign," where the acknowledgment was deemed bad
because it did not appear who had executed or ac-
knowledged the instrument. The acknowledgment
was held void in *Buell* v. *Irwin,* 24 Mich. 145, where
the certificate recited that "personally appeared be-

fore me I. D., to me known to be the person described in and who executed the above deed, and acknowledged that —— executed the said deed''; it not appearing who had acknowledged or executed the same. Much reliance is placed upon the case of *Pickett* v. *Doe,* 5 Smedes & M. (Miss.) 470 (43 Am. Dec. 523). There a sheriff's deed signed ''A. G. Harrison, Sheriff,'' had appended to it this certificate, omitting the venue:

''Personally appeared before me, George Crockett, clerk of the probate court in and for said county, whose name is subscribed to the within deed, as such, who acknowledged that he signed, sealed, and delivered the same, as his act and deed, on the day and year therein mentioned, and for the purposes therein contained. Witness my hand and seal of office this 3d day of August, 1841.

''[Signed] GEORGE CROCKETT, Clerk.''

It will be noted that the acknowledging officer put his own name into the blank which should have been filled with the name of the sheriff. This deed was issued in pursuance of a sale under a judgment against one Ratliff, dated February 24, 1838, and was offered in evidence by the plaintiff in ejectment in support of his claim. He also read in evidence another deed for the same land by the sheriff under an execution on a judgment against a defendant named Hawley rendered November 25, 1836, which was properly acknowledged. In discussing the quoted certificate the court merely said:

''It is believed that the certificate of the clerk is very nearly, if not entirely, to the effect required. But suppose it should be insufficient; does that alter the case? The land claimed was purchased by the Planters Bank, under two different executions, and separate deeds taken, and if either be good, it is sufficient.''

The opinion proceeds to show that the Hawley deed was sufficient to pass title, and affirmed the judgment for plaintiff on that ground. Although the syllabus of the case would indicate that the court held the quoted certificate sufficient, yet it is not sustained by the opinion itself. The case is not an authority for the validity of such an acknowledgment. The case of *Carpenter* v. *Dexter,* 8 Wall. 513 (19 L. Ed. 426), is not applicable here. There the statute required that the grantor should be known to the officer taking the acknowledgment, and that the fact should be recited in the certificate. There was appended to the deed in question proof by the affidavit of a subscribing witness of its execution. This was sworn to before the other witness. All this, taken in connection with a curative statute, was held to validate the deed. Another case relied upon by Mr. Justice BEAN is *Rodes* v. *St. Anthony & Dak. Elevator Co.,* 49 Minn. 370 (52 N. W. 27). There a chattel mortgage was executed by "Wm. Schrieber." The certificate referred to him as "Wm. Strieber," known to the officer "to be the person above named." The court held that as between the parties this was sufficient to pass the title. But the case was made to depend upon *Rogers* v. *Manley,* 46 Minn. 403 (49 N. W. 194), where the issue was whether a certain deed was a forgery. In deciding this question of fact the court considered the name of the grantor in the body of the deed and in the certificate, "Charles Y. Rogers," as circumstantial evidence, when taken in connection with other occurrences, that that individual wrote the name "Charles F. Roggers" as signature to the deed. The question of the acknowledgment being sufficient to entitle the deed to record was not considered. *Bird* v. *McClelland* (C. C.), 45 Fed. 458, went off on the principle

that, where a clerk of the Circuit Court was *ex-officio* clerk of a certain special court in which it was proper to acknowledge deeds, and the officer taking the acknowledgment styled himself as above, and said that the "grantor appeared in said court," it meant the court in which such a procedure was proper. *Touchard* v. *Crow,* 20 Cal. 150 (81 Am. Dec. 108), holds that under a statute allowing a clerk of a court of record to take acknowledgments, his deputy signing as such without using the name of his principal may also take the acknowledgment. This court ruled differently on a like question in *Dennison* v. *Story,* 1 Or. 272, holding that a return signed "A. S. Crabb, Deputy Sheriff," not disclosing his superior, was insufficient. *Wilson* v. *Russell,* 4 Dak. 376 (31 N. W. 645), merely decides that a deputy sheriff executing a deed in the name of his principal may acknowledge it as the act of the latter.

*International Kaolin Co.* v. *Vause,* 55 Fla. 641 (46 South. 3), relates to the acknowledgment of a deed by the corporation's president, under a special statute of that state. *Summer* v. *Mitchell,* 29 Fla. 179 (10 South. 562, 30 Am. St. Rep. 106, 14 L. R. A. 815), treats of the abbreviation of the officer's title. The decision was referable to the principle that the court will take judicial notice of "the true significance of all English words and phrases and all legal expressions": Section 729, L. O. L.; 16 Cyc. 875. *Rackleff* v. *Norton,* 19 Me. 274, was a case in which the acknowledgment is not quoted, but the objection was that no venue was laid. The court held that this was not required, and that, the authority of the officer being conceded, it would be presumed that he acted where he had a right to act. *King* v. *Merritt,* 67 Mich. 194 (34 N. W. 689), disclosed that the certificate stated that the wife ac-

knowledged that she executed the deed "with fear or compulsion of any person," using the word "with" instead of "without." The court held the deed sufficient to convey title as against the grantors. Whether the acknowledgment was sufficient to entitle the instrument to record, and thus impart constructive notice to the creditors of the grantor, was not considered by the court. In *Hughes* v. *Morris,* 110 Mo. 306 (19 S. W. 481), the instrument in question recited "that the undersigned J. C. Mason and O. A. Barron, composing the firm of J. C. Mason & Co.," do sell, etc. It was signed by the firm name only, which also alone appeared in the certificate of acknowledgment. The Supreme Court held it void as against attaching creditors. How this precedent sustains the acknowledgment involved in the instant case is not apparent. Again, *Graham* v. *Whitely,* 26 N. J. Law (2 Dutch.), 254, holds that under the statute of New Jersey a conveyance of land in that state could not be acknowledged in another state, unless the grantor resided in the latter and held a deed thus acknowledged void as to all grantors whose residence was not shown to be in the foreign jurisdiction. It is not believed that this case sustains the certificate which we are considering. In *Bauer* v. *Schmelcher,* 5 N. Y. Supp. 423, a widow, devisee of some realty under her deceased husband's will, conveyed the same. No executor or administrator had been appointed, although the surrogate had admitted the will to probate. She was described in the conveyance by her name and as "executrix and devisee" of the will. In terms, the deed was sufficient to convey her estate. She signed it in her individual name only without the addition of "executrix." The court held that, as she acknowledged the execution of the conveyance not only as

executrix, but also "for the purposes therein named," it was sufficient to pass the title she had as an individual. The words "executrix and devisee" were properly to be rejected as merely descriptive of the person, having no more effect than if she had written after her name "widow" or "dressmaker" or "house-keeper." In *Beckel* v. *Petticrew,* 6 Ohio St. 247, the blank for the venue in the form of certificate was not filled; but the officer recited that he was a "justice of the peace in and for said county," and, as the name of the county appeared in the body of the mortgage, it was held sufficient. *Estate of Dahlem,* 175 Pa. 454 (34 Atl. 807, 52 Am. St. Rep. 848), was a case where the blank for the date of the acknowledgment was not filled, but the mortgage itself was dated, and it was recorded the same day. The court presumed the acknowledgment was also taken on that day. *Love's Lessee* v. *Shields,* 3 Yerg. (Tenn.) 405, was where there was indorsed on the deed this writing:

"State of Tennessee, Greene County.

"January Sessions, 1807, Tuesday, 27th.

"Then was the execution of the within conveyance duly acknowledged in open court by Seymour Catching, the grantor therein named, and admitted to record. Let it be registered.

"Teste: VAL. SEVIER, Clerk."

The objection was that neither the name of the grantor nor the quantity of land appeared in the certificate quoted. The court held, however, that these faults were cured by reference to the deed upon which it was indorsed. This case is criticised by the same court in *Yerger* v. *Young,* 9 Yerg. (Tenn.) 38, showing it not to be in accord with the current of authority. It is not applicable to the present contention. *Blake* v. *Hollandsworth,* 71 W. Va. 387 (76 S. E. 814, 43

L. R. A. (N. S.) 714), holds that, where there are two certificates of acknowledgment indorsed on the same deed, one for the husband and the other for the wife, taken on the same date before the same officer, the official capacity of the officer not being written after his signature to the former, it may be cured by reference to the latter which he signed properly, adding the title of his office. The court held it good as against the grantor, but whether it was entitled to record as constructive notice to creditors was not considered. *Shelton* v. *Aultman & Taylor Co.*, 82 Ala. 315 (8 South. 232), holds that, in the absence of fraud or imposition where a wife signed a mortgage using the name of "S. E. Shelton," and the officer used the same name in a certificate of acknowledgment otherwise regular, she cannot impeach the certificate by showing that her true name is "Lucinda E. Shelton."

There is no objection to the doctrine that we may look to the whole deed in construing its validity whether of execution or acknowledgment. The principle is that one part may aid, but not dispute the other. This, however, does not support the acknowledgment in question. Instead of being aided by reference to the body of the mortgage it is contradicted. If we are to believe the officer's certificate, it appears that the names of two single men have been appended to a deed by a man and his wife who then acknowledge it as their own act, and not that of those named as grantors. If, indeed, as the officer's statement says, the married couple did execute the mortgage, it cannot bind the estate of the bankrupts without further showing of authority, as by power of attorney or the like. On the other hand, if the bankrupts in fact signed the mortgage, then the acknowledgment is manifestly untrue, and does not entitle the instrument

to record. In either case the trustee in bankruptcy is not affected in the absence of actual notice of the execution of the mortgage by his bankrupts. To uphold the certificate is tantamount to saying that Jones can acknowledge as his own a deed purporting to be that of Brown so as to bind the latter and furnish record notice to his creditors.

If the allegations of the complaint were sufficient to authorize the correction of a mutual error, the plaintiff might obtain relief under the doctrine of *Meier* v. *Kelly,* 22 Or. 136 (29 Pac. 265), where it is held thus:

"A judgment lien attaches only to the actual, and not to the apparent, interest of the judgment debtor in land, and is subject to any equitable estate therein hostile to the judgment debtor existing at the time the judgment was rendered, whether known to the judgment creditor or not; and for the purpose of protecting such equitable estate, courts of equity will correct a mistake in a mortgage upon which the equitable estate depends, and, as corrected, give it priority over a subsequently acquired judgment, so that the judgment lien will be confined to the actual interest of the judgment debtor in the land."

The national bankrupt law provides that:

Trustees in bankruptcy, "as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon": U. S. Comp. Stats. Supp. 1911, p. 1500 (U. S. Comp. Stats. 1913, § 9631).

In Section 70, on page 1511 of the same compilation (U. S. Comp. Stats. 1913, § 9654), it is provided that the trustee of the estate of a bankrupt, upon his appointment and qualification, shall be vested by operation of law with the title of the bankrupt, as of the

date he was adjudged a bankrupt, except as to exempt property, to all property which prior to the filing of the petition he could by any means have transferred or might have been levied upon or sold under judicial process against him. It thus appears, according to the national legislation, that immediately upon the qualification of the defendant Sabin as trustee in bankruptcy of the Smiths, so far as the complaint discloses, he at once became the owner of the equity of redemption in the realty described in the mortgage sought to be foreclosed. From that time on it was in the custody of the bankruptcy court within the meaning of the act of Congress. As holder of this estate in the land the trustee may rightly resist the premature foreclosure of the mortgage. He was entitled to withstand the visitation upon his estate of the expenses of foreclosure and the amount of attorneys' fees charged in the complaint. By that much would the estate of his bankrupt be lessened unnecessarily and prematurely. It is possible that the estate may be sufficient to pay in full all claims against the same, including the mortgage in question without resort to foreclosure; hence he has standing to object to the present suit. That the pleading is insufficient to authorize a correction of the alleged mistake is clearly demonstrated by the case of *Hughey* v. *Smith,* 65 Or. 323 (133 Pac. 68), and the demurrer should have been sustained. The so-called supplemental complaint is not in any sense such a document. All its contents could have been stated in either of the previous declarations of the plaintiff. It is merely a second amended complaint. In addition to the objection being well taken to this last complaint, it was error to proceed to judgment and decree without deciding the issue of law thus ten-

dered.    It was an error to overrule the demurrer to the second complaint.

For these reasons, I dissent from the opinion of Mr. Justice BEAN in respect to the sufficiency of the acknowledgment of the execution of the mortgage in question.